IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KENNEDY BRYANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:24-cv-290-ECM |
| | ) | (WO) |
| OCTAPHARMA PLASMA, INC., *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION and BACKGROUND**

Plaintiff Kennedy Bryant ("Bryant") initiated this suit on April 8, 2024, by filing a

complaint in the Circuit Court of Montgomery County, Alabama against Defendant

Octapharma Plasma, Inc. ("Octapharma") and twelve fictitious defendants. (Doc. 1-2).

Bryant alleges that on or about April 8, 2022, she was injured by the actions of an on-staff

nurse while donating plasma at Octapharma's facility in Montgomery, Alabama. (*Id*. at 4–

4, paras. 6–14).  Bryant claims that her alleged injuries are the result of the Defendants'

negligence and/or wantonness. (*Id.* at 5–9, paras. 15–35).  To redress these claims, Bryant

"demands a judgment against the Defendant[s] for actual, and general damages, and such

other damages as allowed by the State of Alabama in the amount reasonably calculated for

the injuries caused by [the] Defendant[s]." (*Id.* at 9).

Octapharma Plasma subsequently removed this case from state court on the basis of

diversity jurisdiction. (Doc. 1 at 2, para. 8); 28 U.S.C. §§ 1332 and 1441.  Bryant is a citizen

of the State of Georgia, and the notice of removal asserts that Octapharma is incorporated

under the laws of the State of Delaware with its principal place of business in North Carolina. (Doc. 1 at 3, paras. 10–12).  As to the fictitious defendants, for the purposes of determining whether this action is removable, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1).  Accordingly, the parties do not contest that there is complete diversity amongst the parties.

Although Bryant seeks damages, her complaint does not specify an amount of damages.  In its notice of removal, Octapharma alleges that the Court has jurisdiction over this matter because the parties are citizens from different states and the potential for actual damages coupled with punitive damages "pushes the case beyond the $75,000.00 jurisdictional threshold." (Doc. 1 at 6, paras. 23–26).

On May 28, 2024, Bryant filed a motion to remand (doc. 7) which is opposed by Octapharma. (Doc. 12).  The motion to remand is fully briefed, under submission, and ready for resolution without oral argument.  Upon consideration of the motion, and for the reasons that follow, the Court concludes that the motion to remand is due to be DENIED.

## II.  STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  "They possess only that power authorized by Constitution and statute." *Dudley v. Eli Lilley & Co.*, 778 F.3d 909, 911 (11th Cir. 2014) (quoting *Kokkonen*, 511 U.S. at 377).  Congress has empowered the federal courts to hear cases removed by a defendant from state to federal court if the plaintiff could have brought the claims in federal court

originally. *See* 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

As relevant here, federal jurisdiction exists—and removal is proper—if the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1332(a)(1), 1441(a); *Caterpillar Inc.*, 482 U.S. at 392.  And where the amount in controversy is not evident from the face of the complaint, the removing party must demonstrate by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional minimum set by 28 U.S.C. § 1332.  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752–54 (11th Cir. 2010).

"[T]he burden of establishing removal jurisdiction rests with the defendant seeking removal." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013).  "Because removal jurisdiction raises significant federalism concerns," federal courts must "construe removal statutes strictly," and all doubts about the existence of federal jurisdiction "should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).  Moreover, subject matter jurisdiction may be challenged at any point in the litigation by the parties or raised *sua sponte* by the Court. *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) ("Unlike most arguments, challenges to subject-matter jurisdiction may be raised by the defendant 'at any point in the litigation,' and courts must consider them *sua sponte*." (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012))); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded [to state court].").

## III.  DISCUSSION

Octapharma removed this case on the basis of diversity jurisdiction.  The parties do not dispute that there is complete diversity between them—Bryant is a citizen of Georgia, and Octapharma is a citizen of both North Carolina and Delaware.  However, the parties disagree as to whether Octopharma has demonstrated that the amount in controversy exceeds the $75,000 jurisdictional minimum set by § 1332.[1]

The complaint does not state an amount of damages.  Where the amount in controversy is not evident from the face of the complaint, the removing party must demonstrate by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional minimum set by § 1332.  *Pretka*, 608 F.3d at 752.  Thus, because Bryant did not specify an amount of damages in her complaint, Octapharma must establish by a preponderance of the evidence that the amount in controversy is met at the time the case was removed to this court.  Bryant argues that "there has been no concrete evidence provided by [Octapharma] in this matter to make a determination that [] Bryant's claims will exceed the jurisdictional amount of $75,000, as required by law." (Doc. 7 at 4, para. 23).

---

[1] Bryant does not state that the amount in controversy is $75,000 or less.  Instead, she states that Octopharma has not sufficiently demonstrated that the amount in controversy is in excess of $75,000. (Doc. 7 at 3, para. 17).  In other words, Bryant does not argue either way as to how much the amount in controversy is.  The Court finds Bryant's refusal to stipulate to an amount in controversy to be probative, but not dispositive. *See Sullins v. Moreland*, 511 F. Supp. 3d 1220, 1229 (M.D. Ala. 2021) ("Refusing to stipulate that the amount in controversy is less than the jurisdictional requirement is not dispositive, but it nevertheless is probative to the existence of the amount in controversy.").

The Court here, and elsewhere in the opinion, cites to non-binding authority.  While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

Octapharma asserts that Bryant's demand letters, dated December 4, 2023 and April 22, 2024, establish that the amount in controversy exceeds $75,000. (Doc. 1 at 6–7, paras. 27–28; doc. 1-2 at 41–45). Specifically, these letters offer to settle all of Bryant's claims for $500,000 and $375,000, respectively. (Doc. 1-2 at 41–45). Bryant, in her motion to remand, counters that "[s]ettlement offers commonly reflect puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence" in determining whether diversity jurisdiction exists. (Doc. 7 at 4, para. 22).

The December 4, 2023 demand letter describes in detail Bryant's alleged injuries, her medical treatment, and the effects of the alleged injuries on Bryant by stating, in part:

> Prior to the incident with Octapharma, Ms. Bryant regularly donated plasma without any incident or complications. She was a stellar student at Alabama State University with a pleasant outlook on her future. After this incident, her mental health and self-esteem dwindled, and her fear of needles have resulted in high health anxiety.
>
> Ms. Bryant's ailments were aggravated by routine daily activities such as, but not limited to engaging in her daily work routine, driving, sleeping, and attending her classes. Her injuries were also exacerbated by sitting for prolonged periods of time, driving long periods of time, laying down, and standing for more than fifteen (15) minutes. Ms. Bryant continues to experience pain and soreness daily that she was not suffering prior to the [incident] made the basis of this claim.

(Doc. 1-2 at 42)[2]. In addition, the demand letter enumerates Bryant's medical expenses which, as of December 4, 2023, were $21,030.56. (*Id*. at 42–43).

---

[2] Throughout the demand letter, counsel for Bryant refers to the disputed incident as a "collision." It is apparent to the Court that this is a clerical error as the letter clearly refers to the alleged episode at Octapharma's Montgomery location described in the complaint.

"A settlement offer constitutes evidence that the [Court] may consider in determining whether the amount in controversy is met." *See Odelia v. Alderwoods (Georgia), LLC*, 823 F. App'x 742, 745 (11th Cir. 2020) (citing *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213 n.62 (11th Cir. 2007)). And "[w]hile [a] settlement offer, by itself, may not be determinative, it counts for something." *Burns*, 31 F.3d at 1097. Bryant discounts the import of her demand letters because "[s]ettlement offers commonly reflect puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence." (Doc. 7 at 4, para. 22). Nonetheless, Bryant's demand letters set forth in detail her injuries, treatment, medical expenses, and damages. In other words, this is not a case where a plaintiff made conclusory or boilerplate allegations. Instead, the comprehensive description of injuries, medical treatment, and damages moves this case from the realm of puffery and posturing into a concrete assessment of damages.

> So, plaintiff's claim, when it is specific and in a pleading signed by a lawyer, deserves deference and a presumption of truth. We will not assume—unless given reason to do so—that plaintiff's counsel has falsely represented, or simply does not appreciate, the value of his client's case. Instead, we will assume that plaintiff's counsel best knows the value of his client's case and that counsel is engaging in no deception. We will further presume that plaintiff's counsel understands that, because federal removal jurisdiction is in part determined by the amount of damages a plaintiff seeks, the counsel's choices and representations about damages have important legal consequences and, therefore, raise significant ethical implications for a court officer.

*Burns*, 31 F.3d at 1095. As such, the Court credits counsel's assessment of the case, which more than exceeds the Court's jurisdictional prerequisite.

Moreover, the Court independently finds the amount in controversy to meet the jurisdictional threshold.  In *Roe v. Michelin N. Am., Inc.*, the Eleventh Circuit held that, when a case is removed on the basis of an initial complaint that does not plead a specific amount of damages, the removing defendant is required to show by a preponderance of the evidence that more likely than not the amount in controversy exceeds the jurisdictional minimum.  613 F.3d 1058, 1061 (11th Cir. 2010).  Under *Roe*, this Court can apply "judicial experience and common sense" to the allegations of the complaint regarding Bryant's injuries and the impact on her ability to function and determine that, more likely than not, when coupled with her medical expenses, Bryant's damages, inclusive of punitive damages, are sufficient to meet the jurisdictional minimum.

Bryant argues that she did not "explicitly or obviously" plead punitive damages, and therefore punitive damages should not be taken into account when assessing the amount in controversy. (Doc. 7 at 3, para. 13).  However, Bryant asserted a wantonness claim against the Defendants (doc. 1-2 at 5), which could result in an award for punitive damages under Alabama law, ALA. CODE § 6-11-20(a), and Bryant's requested relief included all damages allowed for by the State of Alabama (doc. 1-2 at 9).  Accordingly, it is appropriate to factor punitive damages into the amount in controversy. *Rae v. Perry*, 392 F. App'x 753, 755 (11th Cir. 2010) ("Punitive damages must be considered when determining the jurisdictional amount in controversy in diversity cases.") (citing *Holley Equip. Co. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987)).

In sum, the Court finds that the jurisdictional amount in controversy is satisfied on two bases.  First, demand letters sent by Bryant indicate that the amount in controversy is more than $75,000.  And second, punitive damages clearly push the amount in controversy above $75,000 when coupled with Bryant's other damages, including the medical bills represented in her demand letters.  Therefore, the Court concludes that, at the time of removal to this Court, Octapharma, by a preponderance of the evidence, established that the amount in controversy is met, and this Court has jurisdiction.

## IV.  CONCLUSION

Accordingly, for the reasons stated, and for good cause, it is

ORDERED that Bryant's motion to remand (doc. 7) is DENIED.

DONE this 5th day of August, 2024.


       /s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE